PETER BRADY, PLAINTIFF IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Argued June 22, 1908—Decided November 16, 1908.

1. A motorman had charge of a trolley car on which the sand box was out of order through his neglect; he had run the car twice over the same route, on which there was a steep grade at the bottom of which a railroad crossed the street; on the third trip the car ran on the railroad and collided with an engine thereon, injuring the motorman. It appeared that on the previous trips the brake and controller were in working order; that in descending the grade on the third trip the brake and controller were applied to arrest the forward motion of the car, but failed to do so; the rails were covered with ice and snow, and the car wheels slid along the rails to the point of collision; the brake shoes were found, immediately after the accident, firmly locked against the wheels; no sand could be applied by the motorman, as was

usually done in such cases to aid in stopping the car because of a defect chargeable to his negligence. *Held*, that no presumption arises from these facts, that the brake and controller were defective and unsafe.

2. An entry in a book kept by the company in which motormen were required to enter the condition of their cars at the end of each round trip, that the car had "bad hand brakes" is admissible in evidence as showing notice to the master of an existing condition, when such notice is a material inquiry, but it is not competent proof of the fact itself.

On error to the Supreme Court, whose opinion is reported in 45 *Vroom* 413.

For the plaintiff in error, *Samuel Kalisch*.

For the defendant in error, *Leonard J. Tynan*.

The opinion of the court was delivered by

BERGEN, J. The plaintiff in error was in the employ of the defendant as a motorman, and while running a car, loaded with passengers, down a steep incline in a street in the city of Newark, he was unable to stop it before it ran upon a steam railway track crossing the street, and was struck by a passing train. The plaintiff was injured by the collision, and brings this suit to recover damages for the injuries he suffered.

The declaration of the plaintiff contains two counts. The first avers that the brake and controller on the car furnished by the defendant were so defective that when it became necessary to stop the car, in order to prevent it from running or sliding upon the railroad track, he was unable to do so. This count relies alone upon the alleged defective and unsafe condition of the brake and controller. In the second count the plaintiff charges that the car was equipped with a sand box which should contain sand and be in a condition to drop it on the rails of the track whenever, by reason of the grade of the street or the slippery condition of the rails, the brake, controller or other appliances supplied for such purpose were inadequate. At the trial the court instructed the jury that the plaintiff had no right of action based upon any defects

in the operation of the sand box, and the questions submitted to the jury related alone to the issue presented by the first count in the plaintiff's declaration. At the close of the plaintiff's case defendant moved for a nonsuit upon the ground that it had not been shown to have been negligent, and at the close of the whole case it moved for a favorable direction for the same reason. Both motions were refused, and there was a verdict for the plaintiff, upon which judgment was entered. This judgment was reversed in the Supreme Court, and to review that determination this writ was brought.

As the case is presented to this court, plaintiff's right to recover depends upon the question whether he has presented any evidence from which a jury could properly draw an inference that the defendant was guilty of negligence in supplying its servant a car, to be operated by him, which was unsafe for the use intended and required, because the brake and controller, appliances to be used in stopping and otherwise controlling the motion of the car, were defective. There is no direct testimony showing that either the brake or controller were out of order, or defective in any particular part; on the contrary, the plaintiff testified that previous to the trip when the accident occurred, he had run the car twice over the same route on the morning of the accident; that on the two earlier trips the track rails were free from snow and dirt, but on the last trip snow and dirt had been carried on the rails by wagons, and had become very slippery. He was asked:

"*Q.* So that on your first trip you went over exactly the same route as you did on the trip of the accident?

"*A.* Yes, sir.

"*Q.* And your brakes worked all right?

"*A.* Yes, sir.

"*Q.* And your controller worked all right?

"*A.* Yes, sir."

The trip referred to was from the car barn to the end of the route, and the second trip was the return through the same streets to the car barn, regarding which the plaintiff testified as follows:

"*Q.* Did you examine your brake on the return trip, or the second trip?

"*A.* Well, I had been examining it all the way along the route; I had been handling it all along the route.

"*Q.* And you found it in good order?

"*A.* Seemingly in good order.

"*Q.* There wasn't anything the matter with it, so far as you could see?

"*A.* No."

He also testified that on the last trip he had crossed another railroad track, about two and one-half miles before reaching that of the defendant's, which crossed the street at the bottom of a grade of almost the same character as that in the street where the accident happened, and that the conditions were the same except that there was no ice on the track and the car was not carrying as many passengers, and that on that grade the brake controlled the progress of the car.

The trial court admitted against objection secondary proof of the contents of a book kept in a room in the car barn in which each motorman was required to enter a statement of the condition of the car he had run into the barn. This evidence was admitted after notice to the defendant to produce the book, and the statement of counsel that no such book could be found. The witness on this subject testified that such a book was kept in a room where the men waited to take out cars; that the book lay on the desk, but he could not say whether it was in charge of anyone or not; that he saw it on the day of the accident and looked into it to see in what condition the car was when turned in the night before, and found in the book the following entry, "bad hand brakes, sand box out of order;" that the report was signed by one Warren Stickle, a motorman in the employ of the defendant. There was no positive proof either that Stickle made the entry, or that it was in his handwriting. The trial court in admitting the evidence said: "The suggestion that anything bearing the appearance of a report purporting to be a report of the condition of that car on the day before the accident, would,

of itself, operate as a notice to the superintendent in whose office it was kept, seems to me to have a good deal of force." That this evidence would have some weight in determining the question whether the defendant had notice of the defective condition of the car, if it was defective, cannot be disputed, but it would not be competent proof that the car was in fact defective. The condition of the car cannot be established by such entry, and its use must be confined to the question whether the defendant had notice of a condition shown to exist, and cannot be accepted as primary proof of the condition it states. Proof tending to show notice of an existing condition is admissible when such notice is a material inquiry, but it is never competent proof of the fact itself. *Louisville and Nashville Railway Co.* v. *Hall,* 4 *L. R. A.* 710.

While the order in which testimony may be admitted is within the reasonable discretion of the trial judge, we are of opinion that the admission of testimony showing notice to the owner of a defective condition should not ordinarily be allowed until there is *prima facie* proof of the existence of the defect, for notice that a negligent situation existed, when in fact it did not, would not be relevant, or tend to sustain the allegation that it did, and its untimely introduction may create improper impressions in the jurors' mind difficult to eradicate. This will be avoided by first proving the condition and then notice of it to the person whose duty it is to amend it.

There is no proof to justify an inference that either the brake or controller was defective or unsafe when the car started to descend the grade immediately before the accident. The plaintiff testified that on the morning of the accident he had run the car twice down a hill about as steep as the one on the street where the accident happened, and once down the hill, at the bottom of which he was afterwards injured, and that he used the brake which was seemingly in good order and controlled the car; that there was nothing the matter with the brake or controller; he made no complaint of any defect when he reached the starting point after he had gone

to the end of his route and returned, and that he made no examination before starting out again because the car ran all right on the two previous trips. It would seem from the undisputed testimony, that so far as use and observation could demonstrate it, the appliances were in good order, and not unsafe or defective under ordinary conditions. But it is urged that the manner in which the brake and controller operated immediately before the accident, and while the car was descending the hill towards the railroad crossing, raises a presumption that they were out of order. The evidence on this point shows that the plaintiff was running his car down the incline from Orange street towards the railroad crossing; that he was slowing up, and when about half way between the two points he saw the gates at the railroad crossing go down; that the brake would not hold and the car slid because there was no sand to give the car a hold; that he tried to work the sand box, but he could get no sand, either because there was no sand in the box, or that the pipes were frozen; that he put the brake on as far as he could, and finding that the car was sliding, partially released the brake and used the controller to obtain a reverse, or backward motion; that he kept the brake quarterways on so as to make the controller power effective, but the car continued to slide, and when asked, "Q. Then the reason your car did not stop before going over the Delaware and Lackawanna railroad was because the tracks were made slippery by teams going over it and pushing snow on it," he answered, "Yes, by the rails being dirty, ice on it, it was frozen, my brakes wouldn't take." It appears that after the accident the brake shoes were locked tight against the wheels. The plaintiff further testified that he pressed his foot on a pin which should have released the sand from the box, but that it did not flow, and he knew this because the car did not stop. We fail to find in this part of the case any evidence which raises a presumption that the accident happened because the brake or controller furnished him were defective. On the contrary, if the evidence raises any presumption it is, that if he had had the sand box in order, the progress of

the car could have been stopped, and on this subject the jury were instructed by the trial judge that the plaintiff having three times disregarded a rule of the company, regarding the examination of the sand box, he was in a condition of ignorance, as to its condition, by his own conduct, and that if the absence of sand was the cause of the accident, the negligence of the motorman was contributory negligence.

There being no proof of any defect in the brake or controller before the accident, and no presumption being raised that they were defective because the car, notwithstanding the wheels were locked by the brake, continued to slide down a steep hill on slippery rails covered with ice, the plaintiff has failed to prove the negligence laid in his declaration.   There was no averment in the declaration that the defendant was chargeable with negligence because of the condition of the rails, or with any duty to the plaintiff to remove the ice or snow from its tracks on so steep a grade before directing him to run the car over it, and the only question we have considered is whether there was any proof, actual or presumptive, that the appliances complained of were unsafe and defective.   We conclude that there was not, and therefore the judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J.   13.

*For reversal*—None.